UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| AARON COLEMAN and MENDY COLEMAN, Husband and Wife,<br><br>Plaintiffs,<br><br>v.<br><br>SIG SAUER, INC.; PALMETTO STATE ARMORY, LLC; and DOES I-X, unknown parties,<br><br>Defendants. | Case No. 1:25-cv-00650-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Defendants Sig Sauer, Inc. (Sig Sauer) and Palmetto State Armory, LLC's Motion to Dismiss under Rule 12(b)(6)of the Federal Rules of Civil Procedure (Dkt. 6). After reviewing the record and the parties' submissions, the Court finds the briefs adequately present the facts and legal arguments and concludes oral argument would not significantly aid its decision-making process. Dist. Idaho Loc. Civ. R. 7.1(e)(1)(B); *see also* Fed. R. Civ. P. 78(b). For the reasons discussed below, the Court grants the motion in part and denies it in part.

## I. BACKGROUND

Plaintiffs' factual allegations are taken as true for purposes of resolving the motion. Aaron Coleman is a military veteran, an experienced law-enforcement officer, and a firearms trainer (Dkt. 1-2 at 4-5, ¶ 1). In November 2019, he purchased a Sig Sauer P320 X5 Legion pistol (P320) from Defendant Palmetto State Armory, LLC (PSA) (*id.* at 19, ¶ 49). The P320 is a striker-fired semiautomatic pistol. He alleges it lacks a tabbed trigger safety and grip safety, requires less work

to pull the trigger than comparable firearms, and permits trigger actuation from angles that would not actuate comparable firearms (*id.* at 6-8, ¶¶ 8-19). He also explains that some P320s contain a manufacturing defect known as "rollover," which can permit "the striker foot to slip from the sear" and cause an "un-commanded" discharge (*id.* at 7, ¶ 16). The Complaint defines an "un-commanded discharge" to include either a discharge without a trigger pull or a discharge caused when a foreign object contacts the trigger (*id.* at 6, ¶ 12).

On May 14, 2024, Coleman completed a shooting exercise, scanned his target, holstered the P320, turned to his right, and bent down to reach for a rope used to reset steel targets when the P320 "suddenly and unexpectedly discharged while holstered" (*id.* at 20-21, ¶¶ 63-67). Coleman did not touch the trigger and did not intend to fire the weapon (*Id.* at 21, ¶ 68). The round struck his lower right leg and traveled through his right foot, causing substantial tissue damage, blood loss, nerve damage, diminished physical capacity, and continuing physical and emotional injuries (*id.* at 21-22, ¶¶ 69-71).

Coleman claims that Sig Sauer did not warn consumers about the increased risk of uncommanded discharges or the absence of external safety features (*id.* at 8-9, ¶¶ 20-24); represented that the P320 "won't fire unless you want it to"; its striker safety prevents the striker from being released unless the trigger is pulled; and its trigger-safety mechanism prevents discharge unless the trigger is deliberately pulled (*id.* at 9-11, ¶¶ 25-30). He alleges PSA likewise marketed the P320 as safe despite knowing of publicly reported un-commanded discharges (*id.* at 11, 19, ¶¶ 31, 48).

Plaintiffs assert eight claims. Counts One through Three assert strict product liability, negligence, and breach of warranties against Sig Sauer. Counts Four through Seven assert statutory liability under Idaho Code § 6-1407(4), strict product liability, negligence, and breach of

warranties against PSA. Count Eight asserts negligent infliction of emotional distress and loss of consortium against both Defendants (Dkt. 1-2 at 22–36, ¶¶ 72–156). Defendants move to dismiss the action. They principally argue Plaintiffs cannot base product liability on the absence of optional external safety features; external safety features affect firearm functionality; the theory of liability would violate the Second Amendment; Plaintiffs inadequately pleaded express warranties; the asserted warning duties concern open and obvious dangers; and Idaho law protects PSA as a nonmanufacturing seller (Dkt. 6-1).

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the complaint's legal sufficiency. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In resolving a Rule 12(b)(6) motion, the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th Cir. 2021).

To survive a Rule 12(b)(6) motion, a plaintiff's allegations must provide enough factual basis which, taken as true, states a plausible claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim has facial plausibility when the plaintiff pleads factual content allowing the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* The plausibility standard is not akin to a "probability requirement" and requires more than a mere possibility a defendant has acted unlawfully. *Id.*

## III. ANALYSIS

Defendants begin from the premise that Plaintiffs' product-liability claims rest on a single theory: the P320 was defective because it lacked an external safety (Dkt. 6-1 at 2–3, 9, 15; Dkt. 17

at 3–7). The Complaint is broader, however. It identifies alleged defects involving the P320's trigger characteristics and internal firing components, including the rollover condition, and the absence of external safety features. On reply, Defendants expressly acknowledge that Sig Sauer does not seek dismissal at the pleading stage of all theories involving the P320's internal mechanisms (Dkt. 17 at 4).[1] The Court therefore addresses the theories Defendants actually challenge.

**A. Defect Theories Related to External Safety Features**

**1. Optional Equipment Doctrine**

Defendants first ask the Court to adopt the "optional equipment doctrine." Relying principally on *Scarangella v. Thomas Built Buses, Inc.*, 717 N.E.2d 679 (N.Y. 1999), Defendants contend a product is not defective for omitting optional safety equipment when a knowledgeable buyer actually knows the option exists and can balance the risks and benefits of purchasing the product without it (Dkt. 6-1 at 6-8). Defendants acknowledge no Idaho appellate court has adopted or rejected the doctrine (*id.* at 6).

The Court declines to adopt the optional equipment doctrine. Sitting in diversity, the Court applies Idaho law as it presently exists. Defendants identify no Idaho statute or Idaho appellate decision recognizing the doctrine, and the Court finds no adequate basis to predict Idaho would adopt it here. *See, e.g.*, *Doe v. Cutter Biological, a Div. of Miles, Inc.*, 852 F. Supp. 909, 923–24

---

[1] Defendants also state that one allegation concerning the availability of manual safeties is "demonstrably false" and should be stricken (Dkt. 6-1 at 9 n.1). Defendants have not moved under Rule 12(f) or shown that the allegation constitutes redundant, immaterial, impertinent, or scandalous matter within that rule. The Court therefore does not strike it. The Court does not, on the other hand, consider as true Defendants' briefing-only factual assertions about law-enforcement agencies' preferences, balanced trigger mechanisms, broad market effects, or operational reasons for avoiding particular safeties.

(D. Idaho 1994) (declining to expand Idaho tort law without an authoritative signal from Idaho's Legislature or courts). The Court therefore will not dismiss Plaintiffs' claims under *Scarangella* or the other out-of-state optional-equipment cases Defendants cite.

Even if Idaho recognized the doctrine, however, Defendants have not shown its requirements from the face of the Complaint. It requires, among other things, that the buyer actually know the optional safety feature is available. Defendants infer that knowledge from Coleman's extensive firearms experience, but the Complaint does not state that Coleman knew when he purchased his P320 that a model with a manual safety was available. Thus, the doctrine would not support dismissal on the present pleadings even if Idaho recognized it.

**2. Functional Utility**

Defendants next argue that the absence of an external safety device cannot constitute a design defect because such devices affect a firearm's functionality. They rely primarily on *Wasylow v. Glock, Inc.*, 975 F. Supp. 370 (D. Mass. 1996). *Wasylow* involved an intentional actuation of the trigger resulting in an accidental, self-inflicted gunshot wound. Applying Massachusetts law on summary judgment, the court considered whether a manual safety or magazine disconnect would reduce risk without unduly interfering with the pistol's performance. *Id.* at 379–80. The court concluded those alternative designs affected the pistol's functional capabilities because the absence of a manual safety allowed a user to fire quickly and the absence of a magazine disconnect allowed the firearm to fire while loading or reloading. *Id.*

A proposed modification's effect on a product's functionality may bear materially—and, on an appropriate record, decisively—on whether the existing design is defective. But *Wasylow* itself did not rest on a clean categorical proposition that a functional feature can never be a defect. Its analysis was tied to Massachusetts law, the actual accident, the developed record, the particular

functional tradeoffs, and Wasylow's own conduct—pointing the gun at his stomach and pulling the trigger. *Wasylow* does not establish a generally applicable rule that a design characteristic serving any functional purpose is categorically immune from design-defect liability. Defendants identify no Idaho authority adopting such a rule.

Defendants respond that the absence of an external safety nevertheless remains a "necessary part" of Plaintiffs' theory of liability because each alleged defect operates in conjunction with that characteristic (Dkt. 17 at 5–7). Even accepting that characterization, it does not establish that the claims fail as a matter of law. Nor does it establish that a characteristic must be disregarded for assessing defects merely because it serves some functional purpose.

Whether the P320's alleged functional advantages outweigh the asserted safety risks cannot be resolved from the Complaint. Defendants rely on factual assertions that omitting an external safety improves speed and accuracy, reflects law-enforcement preferences, and avoids other operational disadvantages. Those matters may prove relevant to the ultimate defect inquiry, but the Court cannot accept them as true on a Rule 12(b)(6) motion.

### 3. Second Amendment

Defendants also argue that a judicial determination that the P320 is defective because it lacks external safety features would violate the Second Amendment. According to Defendants, imposing tort liability on that basis would effectively remove handguns without external safeties from the marketplace (Dkt. 6-1 at 11–19). On reply, Defendants clarify that their argument does not depend on the effect of a damages award in this particular case. Rather, they focus on the "rule of decision" the Court would apply to permit liability—the state-law principle under which the challenged design could be deemed defective. In Defendants' view, if that rule permits liability based on the absence of an external safety, its broader application would meaningfully constrain

access to handguns sharing that characteristic. Assuming without deciding that application of state tort law in a private action may implicate the Second Amendment, Defendants' argument depends on two propositions the Court cannot resolve in their favor on the pleadings.

First, Defendants characterize the proposed rule of decision as one declaring handguns without external safeties defective. That overstates the rule Plaintiffs ask the Court to apply. Plaintiffs challenge this P320 based on a combination of alleged design and manufacturing defects, including trigger characteristics and internal defects, and the absence of external safety features. Indeed, Defendants acknowledge that some internal-mechanism theories remain regardless of how the Court resolves the external-safety issue (Dkt. 17 at 4).

Second, Defendants contend that imposing liability on the challenged theory would inevitably remove handguns without external safeties from the marketplace. But the Court cannot make that market-wide determination from the pleadings. In *Vlha*, the Ninth Circuit assessed whether a regulation "meaningfully constrained" firearm acquisition by considering actual marketplace circumstances, including the number of licensed manufacturers and firearms produced. *United States v. Vlha*, 142 F.4th 1194, 1198-1200 (9th Cir. 2025), *cert. denied,* 146 S. Ct. 625 (2025). Defendants instead ask the Court to assume how manufacturers and sellers would respond economically to potential tort liability. Neither the Complaint nor any matter properly considered under Rule 12(b)(6) establishes the asserted market consequence.

**B. Express-Warranty Theories**

Defendants next challenge the express-warranty components of Counts Three and Seven. Under Idaho Code § 28-2-313(1), an affirmation of fact, promise, or description relating to goods may create an express warranty when it becomes part of the basis of the bargain. Idaho does not require a buyer to prove reliance on an affirmation as an independent element in the strict sense.

*Jensen v. Seigel Mobile Homes Group*, 668 P.2d 65, 71 (Idaho 1983). Rather, *Jensen* recognized a general presumption that factual affirmations become part of the bargain and held that manufacturer advertising materials distributed by a retailer in connection with a sale can form an express warranty. *Id.* Statements that merely express value or constitute puffery do not. *Id.*

The Complaint identifies several specific Sig Sauer statements, including that the P320 "won't fire unless you want it to," that its striker safety prevents the striker from being released unless the trigger is pulled, and that its trigger-safety mechanism prevents discharge unless the trigger is deliberately pulled (Dkt. 1-2 at 9-11, ¶¶ 25-30). PSA stated more generally that products from its "trusted brands" are "safe and high-quality" ( *id.* at 11, ¶ 31).

Those statements do not plausibly connect themselves to Coleman's November 2019 purchase. The Complaint does not state when Coleman encountered the statements, whether Sig Sauer or PSA made them before his purchase, whether either Defendant communicated them to Coleman in connection with the transaction, or otherwise how they became part of his bargain for the P320. *Jensen* differs because the manufacturer provided advertising and warranty materials in connection with the sale. 668 P.2d at 71. The Court therefore grants the motion as to the express-warranty theories in Counts Three and Seven, dismisses those theories without prejudice, and grants leave to amend.

**C. Failure to Warn**

Defendants contend Plaintiffs' warning theories fail because the relevant dangers are open and obvious: a firearm's function is to fire, and Coleman's model visibly lacked an external safety. Idaho law recognizes that an obvious danger may, in appropriate circumstances, eliminate a duty to warn as a matter of law. But whether a danger is obvious generally presents a fact-specific question, and a court may resolve it as a matter of law only when the undisputed facts permit one

reasonable conclusion. *Puckett v. Oakfabco, Inc.*, 979 P.2d 1174, 1182 (Idaho 1999). That standard is not met here.

Further, Defendants' formulation does not encompass all the dangers identified in the Complaint. Among other things, the Complaint identifies a propensity to discharge without deliberate trigger actuation, and alleges Coleman's pistol discharged, while fully holstered, without an intentional trigger pull (Dkt. 1-2 at 6-8, 20-21, ¶¶ 12, 16-19, 67-68). On those facts, the Court cannot conclude as a matter of law that the alleged danger was "glaringly obvious." *Puckett*, 979 P.2d at 1182. Accordingly, Defendants have not shown that the failure-to-warn claims should be dismissed.

**D. Claims Against PSA and Idaho Code § 6-1407**

Defendants argue Idaho Code § 6-1407 protects PSA because it sold, but did not manufacture, the P320. Section 6-1407 limits the liability of nonmanufacturing product sellers in specified circumstances.

Under subsection (1), a seller is generally not liable if it lacked a reasonable opportunity to inspect the product in a manner that would or should have revealed the alleged defect, or if it acquired and sold the product in the same sealed package or container. Idaho Code § 6-1407(1). That limitation does not apply, in relevant part, if the seller knew or had reason to know of the defect. *Id*. at (1)(a)–(e). Subsection (4), by contrast, makes a nonmanufacturing seller subject to the manufacturer's liability if the manufacturer cannot be served or has been judicially declared insolvent or if the Court determines it is highly probable the claimant could not enforce a judgment against the manufacturer. *Id*. § 6-1407(4). The Court considers the provisions separately.

**1. Idaho Code § 6-1407(1)**

The Idaho Supreme Court has explained that a retailer may remain liable notwithstanding § 6-1407(1) if, among other circumstances, the retailer "had reason to know of the alleged defect" or had a reasonable opportunity to inspect the product and should have discovered it. *Hawks v. EPI Products USA, Inc.*, 923 P.2d 988, 994 (Idaho 1996) (citing *Hoopes v. Deere & Co.*, 788 P.2d 201, 205 (Idaho 1990)). Idaho law does not require that determination be made at the pleadings stage; in *Hawks*, the retailer obtained subsection (1)'s protection only after the jury found that, although it had an opportunity to inspect the product, it did not know or have reason to know of the defective condition. *Id*.

Defendants have not established from the face of the Complaint that PSA satisfies either circumstance triggering subsection (1)'s liability limitation. The Complaint does not establish that PSA lacked a reasonable opportunity to inspect the P320 in a manner that would or should have revealed the alleged defect. Nor does it allege that PSA acquired the P320 in a sealed package or container and sold it in the same sealed package or container. Moreover, Plaintiffs allege PSA knew before Coleman's purchase of publicly reported unintended P320 discharges and knew or should have known of Sig Sauer's Voluntary Upgrade Program and the alleged defects in the P320 (Dkt. 1-2 at 19, 32–34, ¶¶ 48, 128–38). Those allegations place PSA's entitlement to subsection (1)'s protection at issue and cannot be resolved from the face of the Complaint. *Compare, e.g.*, *Crandall v. Seagate Technology*, No. 1:10-cv-128-MHW, 2011 WL 280990 (D. Idaho Jan. 25, 2011) (deciding whether retailer knew or had reason to know the product was defective on summary judgment).

Accordingly, the Court declines to dismiss Plaintiffs' direct claims against PSA under § 6-1407(1).

**2. Idaho Code § 6-1407(4)**

Count Four presents a different issue. Section 6-1407(4) makes a nonmanufacturing seller subject to the manufacturer's liability if the manufacturer is not subject to service of process under the laws of the claimant's domicile or has been judicially declared insolvent, or if the Court determines outside the jury's presence that it is highly probable the claimant could not enforce a judgment against the manufacturer. Idaho Code § 6-1407(4)(a)–(c). The *Hawks* court's explanation of the trial court's application of § 6-1407 illustrates the provision's operation: after the manufacturer was determined to be insolvent, the retailer became responsible under subsection (4)(b) for that manufacturer's apportioned share of liability, even though subsection (1) separately protected the retailer from its own direct, 5 percent share. *Hawks*, 923 P.2d at 991–92, 994.

Here, however, Plaintiffs allege no facts satisfying any of subsection (4)'s conditions. Sig Sauer is a defendant in this action and has appeared. The Complaint does not allege that Sig Sauer has been judicially declared insolvent or allege facts supporting a determination that Plaintiffs probably could not enforce a judgment against it. Instead, Plaintiffs argue that Sig Sauer's "ongoing solvency or ability to satisfy a judgment" is presently unknown (Dkt. 16 at 19). The court in *Crandall* rejected materially the same reasoning. There, the plaintiff argued subsection (4) applied because no applicable insurance policy had been located, and despite the manufacturer's apparent capitalization, its ability to satisfy a future judgment was uncertain. The court concluded that such speculation did not satisfy § 6-1407(4). *Crandall*, 2011 WL 280990, at *4–5.

The same conclusion follows here. Subsection (4)(c) permits the Court to determine whether it is highly probable that a judgment would be unenforceable, but speculating that such circumstances might arise later does not itself state a present claim under the statute. Because

Count Four alleges no facts supporting any of § 6-1407(4)'s three conditions, the Court dismisses Count Four without prejudice.

### E. Count Eight

Finally, Defendants argue Plaintiffs' negligent-infliction-of-emotional-distress and loss-of-consortium claims fail because they depend on the underlying product-liability claims. Because the Court does not dismiss those underlying tort claims, that argument does not support dismissal of Count Eight. The Court therefore denies the motion as to Count Eight.

## IV. ORDER

**IT IS ORDERED that:**

1. The Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss (Dkt. 6).

2. The motion is **GRANTED** as to Count Four and the express-warranty theories asserted in Counts Three and Seven. Count Four and those express-warranty theories are **DISMISSED WITHOUT PREJUDICE**. The motion is **DENIED** in all other respects.

3. Plaintiffs may file an amended complaint within **twenty-one (21) days** after entry of this Order.

DATED: September 23, 2026

Amanda K. Brailsford
U.S. District Court Judge